[No. 10,134.]

# PEOPLE *v.* GEIGER.

APPEAL IN CRIMINAL CASE.—Upon an appeal in a criminal case being taken, the Clerk of the Court with whom the notice of appeal is filed, must, within ten days after the same is filed, without charge, transmit to the Clerk of the appellate Court, a copy of the notice of appeal and of the record, and of all bills of exceptions, instructions, and endorsement thereon.

DECLARATIONS AS EVIDENCE.—If two are jointly indicted for murder, and are tried separately, and on the trial of one there is testimony tending to show a conspiracy between them, the declarations of the one not on trial, made before the killing, may be received in evidence.

IDEM.—When such declarations have been admitted in evidence, it is proper for the Court to instruct the jury to disregard them, unless the conspiracy is satisfactorily proved.

EVIDENCE OF CONSPIRACY IN CRIMINAL CASE.—If two are jointly indicted for murder, and one is tried separately, and there is evidence of a conspiracy, an instruction to the jury that if there was a conspiracy, and the deceased was murdered by either of the conspirators in pursuance of the conspiracy, the verdict should be guilty, is not erroneous. If the instruction is not sufficiently explicit about preponderating evidence on the question of conspiracy, the defendant should ask the Court to make it more specific.

DECLARATIONS OF CONSPIRATOR.—The conspiracy to commit a crime being proved on the separate trial of one of the conspirators, the jury are to give the same weight to the declarations of the co-conspirator not on trial, as they would give to them if made by the one on trial.

CHALLENGE TO GRAND JURY.—If a person is charged with the commission of a crime in a sworn complaint, and is arrested on a warrant issued by a magistrate on the complaint, and is under arrest when the grand jury meets, but, before an examination before the magistrate, is taken before the grand jury about to be empaneled and informed by the Judge that he may interpose a challenge to the panel or to an individual juror, and declines to interpose a challenge, he waives the right to interpose such challenge after he is indicted.

APPEAL from the District Court, Seventh Judicial District, county of Sonoma.

The defendant and James Alexander were jointly indicted for the murder of Catherine Strong, charged to have been committed in the county of Mendocino, on the 1st day of February, 1874. The defendants had no examination before a magistrate, but were indicted by the grand jury soon after their arrest. On the application of the defendants, the place of trial was changed to the county of Sonoma.

On the trial there was testimony showing that the defendant and Alexander had been residing in Sherwood Valley, Mendocino county, in the same house, for over three years, and were partners in a stock ranch, and in a large amount of stock, consisting of sheep, cattle and horses. They superintended their stock together, and were in the habit of riding over the ranch and attending to their stock. The body of the deceased was found on or near the ranch. She had been killed by a bullet fired from a gun. There was testimony tending to show that after Mrs. Strong was missed by the neighbors, several of them made inquiries of Geiger as to her whereabouts, and he answered that he had seen her three days after she had been seen by any one else, dressed in a man's clothing, disguised, on horseback, and going away, in his opinion, to escape from a prosecution he had instituted against her. Some six days after she was missing, when Alexander was asked in Geiger's presence where Mrs. Strong was, he answered that Geiger was in possession of the facts; and gave, as a reason, in his mind, why Geiger's statement was true, the additional fact that across the hill from where the parties were standing, on their ranch, there were twenty-five dead sheep on forty acres of ground, which showed evidence of having been killed by a vicious dog or dogs. The prosecution referred to by Geiger was a complaint filed by Geiger charging Mrs. Strong with having dogged his and Alexander's sheep. The evidence tended to show that there were no dead sheep in the place or in the direction mentioned.

In addition to the foregoing, witness Traber testified that, about the 20th of November, 1873, Geiger came to his mill and told him depradations were being committed in the neighborhood, and that the law would not take hold of the parties, and proposed to form a vigilance committee. He said Alexander had gone to Healdsburg where there was a vigilance committee, and would get their constitution and by-laws, and that he, Geiger, would act as one of the executive officers. Geiger also said that one Bell had jumped a part of his and Alexander's ranch, and was living with Mrs. Strong, and he thought she was the

cause of it; that Mrs. Strong had attacked his wife and children on the highway, and he did not feel safe to let her live any longer in the neighborhood, and that there ought to be an example made of her and some other parties, and he thought they would do so.

H. T. Hatch testified that, in August, 1873, he had a conversation with Geiger and Alexander. It had appeared that Mrs. Strong's husband had been convicted of some crime on the testimony of Geiger and Alexander, and sentenced to State Prison. Hatch said he told Geiger and Alexander that Strong had applied for a new trial, and that Geiger replied that he could not get one, and that his wife ought to be with him, and if she did not look out she would be put there, or taken care of. B. P. Son testified that he assisted the sheriff in arresting Geiger and Alexander, and the first night after their arrest slept in the same room with them, at the house of one Tuttle. That about four o'clock in the morning he heard Geiger and Alexander conversing in a whisper about their business, and who they would employ for an attorney. That Alexander asked Geiger what he thought of the case, and Geiger replied that he thought it was a pretty hard case. The foregoing is the substance of the testimony offered on the question of a conspiracy. After it had been introduced, the prosecution called as a witness W. J. Blair, who testified that, about the 1st of January, 1874, he had a conversation with Alexander when Geiger was not present. The witness was asked to repeat the conversation. The defendant objected because it was "*res inter alios acta.*" The Court overruled the objection, because evidence had been introduced by the prosecution tending to show a conspiracy between Geiger and Alexander. The witness then testified that Alexander said, "here is the damned old bitch up on the hill here; (referring to Mrs. Strong) we can't turn any sheep outside without her running, dogging, and killing them; that she was a bad woman, and would burn your fences or buildings if she was mad at you, and he did not think it was any more harm to kill such a damned old bitch than a dog; that she was not fit to live among white people."

The Court instructed the jury as follows:

"Testimony was offered by the prosecution for the purpose of showing a conspiracy between the defendant Geiger and Alexander to perpetrate an illegal act against the deceased, Catherine Strong. You are the judge as to whether a conspiracy has been proved or not. Certain conversation with one Blair and Alexander was admitted in evidence. I instruct you that if you are satisfied from the evidence that a conspiracy has been fully and satisfactorily proven to perpetrate an act of violence upon said deceased Strong, then you have the right, and it is your duty to consider the statements made, if any were made, by Alexander to said Blair, and draw the same conclusion from them as if made by Geiger. If on the other hand the alleged conspiracy has not been fully and satisfactorily proved, you should entirely disregard the statements made by Alexander to Blair, and all statements made by Alexander not in the presence of Geiger."

The seventh instruction given by the Court was as follows: "In case the jury comes to the conclusion from the evidence that the defendant and James Alexander entered into a conspiracy for the purpose of killing Catherine Strong, and that she was afterwards murdered in Mendocino county, by either of said conspirators, in pursuance of said conspiracy, then your verdict will be, guilty."

The defendant was convicted of murder in the first degree, and the jury adjudged that he should be imprisoned for life. The defendant appealed.

The other facts are stated in the opinion.

*D. S. Terry,* for the Appellant.

The defendant had not been held to answer before the indictment was found.

The various steps in criminal proceedings, as prescribed by our Penal Code, are: 1st. The information and examination of the informant. (Sec. 811.) 2d. The warrant of arrest, which requires the officer executing it to take the party accused before a magistrate. (Sec. 814.) 3d. The arrest upon which the officer is required in all cases to take the

defendant before a magistrate without unnecessary delay. (Secs. 823 and 848.)    4th. The examination of the case, or if it is for any cause postponed, the committal for examination.    (Secs. 860 to 863.)    In this examination the testimony must be reduced to writing, signed by the witness, and certified to by the magistrate.    (Sec. 869.)    If it appears from this examination that there is sufficient ground for believing that the defendant is guilty of a public offense, the magistrate must indorse on the deposition an order "that he be held to answer."    (Sec. 872.)

The order holding to answer can only be made after the examination.    (*Ex parte Walsh*, 39 Cal. 740.)

Not having been held to answer, the defendant could not exercise the right of challenging the Grand Jury, or any member of it.

Section 894 of the Penal Code provides that, "The people, or a person. held to answer on a charge of a public offense, may challenge the panel of a grand jury, or an individual juror."    No one who has not been held to answer can exercise this right.    *Expressio unius est exclusio alterius.*

A defendant under indictment may, "in answer to the arraignment, move to set aside, demur, or plead to the indictment."    (Penal Code, Sec. 990.)

And when the defendant has not been "held to answer" before the finding of the indictment, it must be set aside by the Court in which the defendant is arraigned, on any ground which would have been good ground of challenge to the panel or to an individual grand juror.    (Penal Code, Sec. 995; *People* v. *Romero*, 18 Cal. 89; *People* v. *Romero*, 24 Cal. 234; *People* v. *Romero*, 28 Cal. 469.)

It is never competent to introduce against one on trial for an alleged crime the statements of an accomplice, unless such declarations are made during the pendency of a criminal enterprise and in furtherance of its object.    (*People* v. *Moore*, 45 Cal. 20.)

If the declarations of an accomplice are sought to be introduced, the prosecution must first show the existence of a conspiracy between the defendant and the party whose declarations are sought to be introduced in evidence to

commit the crime charged in the indictment, and that the statements were made pending the conspiracy and in furtherance of its objects. (*People* v. *Trim,* 39 Cal. 78; 1 Greenleaf on Evidence, Sec. 111; 1 Wharton, American Criminal Law, Sec. 702.)

The rule that the acts and declarations of a conspirator may be given in evidence to charge his fellow conspirators, is subject to this limitation, that the acts and declarations admitted be those only which were made and done during the pendency of the criminal enterprise, and in furtherance of the common object, they must be concomitant with the principal act, and connected with it so as to constitute a part of *res gestœ.* (*Patton* v. *State,* 6 Ohio, N. S., 647; *Hunter's Case,* 7 Gratton, 641; *People* v. *Trim,* 39 Cal. 19; *People* v. *Moore,* 45 Cal. 19; 3 Greenleaf on Evidence, Sec. 94.)

The vice of the seventh instruction is, that under it a mere preponderance of evidence is sufficient to establish the fact of conspiracy. A conclusion is always arrived at in favor of a proposition which is supported by preponderating evidence, and in civil cases this is all that is required. But the rule is different in criminal cases, when every fact necessary to establish the guilt of the defendant must be proven to the entire satisfaction of the jury. (*People* v. *Milgate,* 5 Cal. 127; *People* v. *Phips,* 39 Cal. 334; *People* v. *Padilla,* 42 Cal. 540.)

*John L. Love,* Attorney-General, and *Geo. A. Blanchard,* for the People, argued that the defendant was not prejudiced by the refusal of the Court to permit him to challenge the Grand Jury, and cited Penal Code, Sec. 1404. They also argued that the statements of Alexander to Blair showed that the acts spoken of were in furtherance of the common design against the person of Mrs. Strong, and cited *People* v. *Trim,* 39 Cal. 75.

By the Court, CROCKETT, J.:

The transcript as originally certified by the Clerk of the Court below and filed here in November last, was defective in that it did not show that an appeal had been taken. No

notice of appeal being found in the record, the case could not be proceeded with here until the defect in this particular had been supplied. In this connection it may not be inappropriate to again call attention to the provisions of the Penal Code regulating appeals in criminal cases: "Sec. 1246. Upon the appeal being taken, the Clerk with whom the notice of appeal is filed must, within ten days thereafter, without charge, transmit to the Clerk of the Appellate Court a copy of the notice of appeal, and of the record, and of all bills of exceptions, instructions and indorsements thereon," etc.

The cumbrous system of criminal procedure prescribed by the statute, even when pursued with all possible diligence, too often necessitates much delay in the administration of criminal justice, and it is important that this should not be needlessly increased by a failure to observe the plain requirements of the statute in preparing transcripts upon appeal to the Court.

We think there was sufficient evidence of the conspiracy between Alexander and the defendant to justify the Court in admitting in evidence the declarations of the former, made previous to the alleged killing. The question of conspiracy was then submitted to the jury, with instruction to disregard the declarations of Alexander, unless the conspiracy was satisfactorily proved. This was the proper practice.

The objection made to the seventh instruction given on the request of the prosecution is hypercritical. The instruction does not intimate that on the question of conspiracy the jury may act on preponderating evidence; and, if the defendant desired to have it made more specific on this point, he should have called the attention of the Court to it, and requested a modification.

The eighth instruction was to the effect that if Alexander and the defendant had conspired to perpetrate an act of violence upon Mrs. Strong, the jury might consider the declarations made by Alexander in respect thereto, and "draw the same conclusion from them as if made by Geiger." In other words, the conspiracy to commit the act of violence

being proved, the declarations of Alexander are to be treated as the declarations of Geiger. They are to have no greater or less weight than if Geiger himself had made them. If the two had conspired to commit an assault and battery upon Mrs. Strong, it would have been competent on the trial of an indictment for murder against them to prove the conspiracy to commit the assault and battery, as tending to show their hostility toward her. The conspiracy being proved, the declaration of either conspirator in respect to the assault and battery would be competent evidence against the other, as tending to show in a greater or less degree his animosity toward the deceased. It would be for the jury to determine how much weight, if any, was due to such evidence. But we think the instruction states the law correctly.

The motion to set aside the indictment was properly denied. When the grand jury which found the indictment was impaneled, the defendant was in actual custody under a warrant of arrest, issued by a magistrate on a sworn complaint, charging the defendant with the crime of murder, for which he was afterwards indicted. But he had not then been examined by the committing magistrate. When the grand jury was about to be impaneled, the defendant was brought into Court, and was informed by the Judge that he might then interpose a challenge to the panel or to any individual grand juror, the grand jury being then present. But the defendant declined to interpose any challenge, on the ground that he had not then been held to answer for any offense.

The defendant, at the proper time, moved to set aside the indictment, on the ground that some of the grand jurors who found it, were incompetent to act by reason of their having previously formed and expressed an unqualified opinion that the defendant was guilty of the crime imputed to him, and moved for leave to challenge the said grand jurors and to prove the challenge good. But the Court denied the motion, on the ground that when the grand jury was impaneled the defendant had been held to answer within the meaning of section 995 of the Penal Code, and

had waived his right of challenge. That section enumerates several grounds on which an indictment may be set aside, and among others, "when the defendant had not been held to answer before the finding of the indictment, on any ground which would have been good ground for challenge either to the panel or to any individual grand juror." Section 872 provides, that when a person accused of crime has been arrested and brought before a committing magistrate, if it appears that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty thereof, the magistrate must endorse on the deposition an order to the effect that, it having been made to appear that a public offense has been committed, and that there is sufficient cause to believe that the defendant is guilty thereof, "I order that he be held to answer to the same." Sections 873, 874 and 875 prescribe how bail may be given by the accused in bailable cases, and sections 876 and 877 direct that a commitment be issued by the magistrate, commanding the sheriff to receive the defendant into custody, "and detain him until he is legally discharged." As already stated, when the grand jury which found this indictment, was impaneled, the defendant had not been examined before the committing magistrate, but was in actual custody in the county jail under a warrant of arrest, issued upon a sworn complaint, charging him with the crime of murder. Section 923 of the Code makes it the duty of the Grand Jury to "inquire into the case of every person imprisoned in the jail of the county on a criminal charge, and not indicted." It was therefore the especial duty of the grand jury to inquire into this case; and though the defendant had not been "held to answer" in a strict technical sense, as that phrase is employed in section 872, we think he was held to answer within the provision of section 995. Being in actual custody in the county jail upon a warrant of arrest issued on a sworn complaint, and having been offered the opportunity to challenge the grand jurors, about to be impaneled, whose especial duty it was to inquire into his case, we think this was a substantial compliance with the requirements of the statute. This constru-

tion of the statute will subserve the ends of justice, and prevent vexatious delays in the administration of criminal law. A defendant in actual custody, under a warrant on a sworn complaint, who is confronted with the grand jurors, whose especial duty it is to investigate his case, and who is offered an opportunity to interpose his challenge, cannot complain that he has been deprived of any substantial right in that particular. But we are not to be understood as extending the rule beyond the facts of this case.

Judgment affirmed. Remittitur forthwith.

Mr. Justice McKINSTRY did not express an opinion.