THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* VÁZQUEZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Guayama in a prosecution for bribery.

No. 655.—Decided April 30, 1914.

BRIBERY—WAYS OF COMMITTING BRIBERY—DUPLICITY OF CHARGES—INFORMATION.—In accordance with section 105 of the Penal Code, the crime of bribery may be committed in either of the ways expressed therein, *i. e.*, asking for a bribe, receiving a bribe or agreeing to receive a bribe, but when all three acts are committed at the same time and a person is charged with them as successive acts of a single transaction, they constitute a single crime and the information does not contain the defect of a duplicity of charges.

JURY—CHALLENGE TO THE ARRAY.—A general challenge to the array is an objection made to all the jurors returned to serve as jurors for a term of the court or for the trial of a certain case, and can be founded only on a material departure from the forms prescribed in regard to the drawing and return of the jury or on the intentional omission to summon one or more of the jurors drawn.

ID.—CHALLENGE TO THE ARRAY.—The fact that at a certain time 200 names are not found in the box is not sufficient ground for a challenge to the array, for that fact alone does not imply that the jury commissioners failed to select the 200 names required by law. The names of some jurors may have been stricken from the list because of death, permanent absence or exemption from service.

ID.—CHALLENGE TO THE ARRAY—SPECIAL JURORS.—The fact that in addition to the 24 jurors of the regular panel serving in a district court the court ordered other special jurors to be summoned to fill the places of those who might be challenged or excused, is no ground for a challenge to the array.

ID.—CHALLENGING JURORS—DISCRETION OF COURT.—Every juror is required to take two oaths: (1) The *voir dire* as to his qualifications and (2) to try the

particular case before the court, and challenges should be made after the first oath is taken and before the second, but the court, in the exercise of its discretional power, may vary the order prescribed when there are good reasons therefor, and when it does this it would have to be shown that the court abused its discretional power before the error alleged to have been committed could serve as a ground for the reversal of the judgment.

ID. — CHALLENGE OF JUROR FOR IMPLIED PARTIALITY — RELATIONSHIP BETWEEN JUROR AND VICTIM.—A member of the jury in this case who testified that he was the cousin of the victim in the action for murder, in the trial of which the bribery was committed, was challenged for cause by the defense based on subhead 1 of section 227 of the Code of Criminal Procedure, and the court overruled the challenge. *Held:* That technically the case of the said juror did not come under the provisions of the section referred to.

ID.—CHALLENGE OF JURORS FOR CAUSE—PEREMPTORY CHALLENGE—ERROR.—An error which a court may commit in overruling a challenge of jurors for cause is immaterial and is cured if the accused peremptorily challenges the same jurors later or is in a position to do so and does not.

EVIDENCE—TESTIMONY OF PERSON NOT PARTY TO ACTION.—The rights of the accused cannot be prejudiced by the testimony of another person unless it is shown, as in this case, that the accused and said other person had combined in the fraudulent transaction to which the testimony refers. The better practice in such cases is first to prove the relationship existing between the accused and the person about to testify.

MOTION TO QUASH.—A motion to quash made by the accused after only some witnesses for the prosecution have testified, is generally premature and improper.

VERDICT OF JURY—CONTRADICTORY EVIDENCE.—The verdict of guilty returned by a jury after deciding the conflict arising from contradictory evidence, which verdict served as a basis for a judgment of conviction, should be accepted by this court unless it is shown that the court or the jury was influenced by passion, partiality, or prejudice or committed manifest error.

FORMER JEOPARDY—BRIBERY COMMITTED IN DIFFERENT WAYS.—In order that a plea of former jeopardy may be sustained, it is necessary that the two offenses be identical. A juror may commit two distinct crimes of bribery in the same case—one as such juror by receiving the bribe directly for the sale of his vote and the other as a private individual acting in combination with the interested party by offering and giving money to another juror for the sale of his vote.

EVIDENCE—ACCOMPLICE—KNOWLEDGE OF INTENDED COMMISSION OF CRIME.—The fact of itself that a person is aware that a crime is about to be committed and keeps silent is not sufficient to make him an accomplice, and his testimony is admissible against the accused.

The facts are stated in the opinion.

*Mr. Charles E. Foote,* fiscal, for The People.

*Messrs. F. Cervoni Gely, Eugenio Benítez Castaño* and *M. Benítez Flores* for the appellant.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court

of Guayama convicting Victorio Vázquez of the crime of bribery and sentencing him to ten years' imprisonment in the penitentiary at hard labor.

The pertinent part of the information reads as follows:

"The *fiscal* charges Victorio Vázquez with the crime of bribery as defined in section 105 of the Penal Code, a felony committed in the following manner: On or about December 16, 1912, in the city of Guayama which forms a part of this judicial district, the accused, Victorio Vázquez, while serving as juror in this district court, unlawfully, wilfully, corruptly, and criminally solicited, asked for, received, and agreed to receive a bribe of more than one hundred dollars from Alfredo Amy with the intention and purpose that the said amount of money should influence his vote, opinion and verdict as such juror in favor of Arturo Amy, a son of the aforesaid Alfredo Amy, who then and there was charged with the crime of murder in the second degree, and the accused, Victorio Vázquez, having been named, drawn and duly summoned to serve as a juror on the regular panel of this district court during the month of December, 1912, criminally asked for, received, and agreed to receive the said amount of money under the agreement and promise to vote as such juror in favor of the acquittal of Arturo Amy in the case of *The People of Porto Rico* v. *Arturo Amy* for the crime of murder in the second degree, the trial of which was set for December 17, 1912, and such promise of acquittal was made by the accused knowing that the question of the innocence or guilt of the said Arturo Amy would be submitted to him as such juror."

The accused demurred to the information, alleging: (1) that the facts stated therein did not constitute a public crime; (2) that it was unintelligible; (3) that it charged more than one crime. Thereupon the *fiscal* corrected the information by substituting the words "asked for" for the word "gave" which appeared therein, and the court, after hearing arguments on both sides, overruled the demurrer.

In his brief filed in this court the accused maintains that the court erred in thus deciding the questions raised. In our opinion the trial court acted correctly.

Section 105 of the Penal Code reads as follows:

"Every judicial officer, juror, referee, arbitrator, and every person authorized by law to hear or determine any question or controversy, who asks, receives, or agrees to receive, any bribe, upon any agreement or understanding that his vote, opinion, or decision upon any matter or question which is or may be brought before him for decision, shall be influenced thereby, is punishable by imprisonment in the penitentiary not less than one nor more than ten years."

It is sufficient to compare the above section with the information to conclude easily that the information charges the accused with an act clearly defined and punished by the said section.

The information is not unintelligible. The use of the word "gave" instead of the words "asked for" created some confusion, but this was properly corrected in due time by the *fiscal.* Perhaps the information states more than is necessary to show the commission of the crime, but by no means can this be held to be such a defect as to invalidate it.

Nor does the information charge more than one offense. The appellant maintains that to ask for a bribe is a crime, to receive it is another and to agree to receive it is still another. We agree that the crime may be committed in any of the said ways—asking for a bribe, receiving it or agreeing to receive it—but when all three acts are committed at the same time and a person is charged with them as successive acts of a single transaction, they constitute, as in the present case, one single crime.

The question raised in the demurrer to the information having been decided and the rulings thereon being correct, as we have seen, the accused pleaded not guilty and that he had been acquitted of the same offense, and elected to be tried by a jury.

A day having been set for the trial, different questions arose as to empanelling the jury, which questions are submitted to this court in the third, fourth, fifth, sixth, and seventh assignments of error. Let us see whether or not they are well founded.

The appellant contends that the trial court erred in overruling his general challenge to the array (a) because the panel was drawn from 180 names instead of 200 as prescribed by law, and (b) because after the 24 regular jurors had been summoned, the court, considering this number insufficient, ordered that six more and later 20 more be drawn to serve exclusively in this case.

As to the general challenge, we will say that the transcript of the record does not confirm the alleged facts on which it is based, namely, that there were only 180 names of jurors in the box, therefore we have no basis to aid us in deciding the question raised. But even if it had been shown that there were only 180 names in the box when the jurors were drawn for this case, that fact alone would be no ground for challenging the array.

According to law, a challenge to the array is an objection made to all the jurors returned to serve as jurors for a term of the court or for the trial of a particular case. Said challenge can be founded only on a material departure from the forms prescribed in regard to the drawing and return of the jury or on the intentional omission to summon one or more of the jurors drawn. Sections 210, 211 and 212 of the Code of Criminal Procedure.

The fact that at a certain time 200 names are not found in the box does not imply that the jury commissioners failed to select 200 names as prescribed by the statute. They might prepare the complete list of 200 jurors to serve during one entire year and then something might occur to require the striking out of some of the names. The statute itself anticipated a case of this kind when it provided that if the tickets drawn from the box contain the name of any person who is dead or who may have moved permanently from the district, or who is exempt from jury service, and the fact be made to appear to the satisfaction of the court, the name of such person shall be struck from the list and another juror shall be drawn in his place. Section 200 of the Code of Criminal

Procedure. And when the name of the juror has been stricken from the list it is natural that the ticket containing the name is not returned to the box.

And as to the fact that in addition to the 24 jurors who were serving on the regular panel the judge ordered other special jurors to be summoned for this case, we will say that we see nothing incorrect in this action. Often, in view of the importance of a case pending trial, the judge can foresee that there will be many jurors excused and challenged and in order that no unnecessary delay may occur in the administration of justice, he may order that a sufficient number of jurors be summoned to make up the jury to try the case. In this manner the empanelling of the jury may begin with the regular jurors summoned according to section 199 of the Code of Criminal Procedure and be continued, if necessary, with the others who were summoned specially. Section 202 of the said code.

The appellant also alleges that the court erred in not compelling the *fiscal* to make his challenges as each juror appeared. It appears that the *fiscal* reserved his peremptory challenges and the court permitted him to do so, granting a similar privilege to the defense.

Section 221 of the Code of Criminal Procedure provides that the challenge must be made when the juror appears and before he is sworn to try the case, and also that the court may for cause permit it to be made after the juror is sworn and before the jury is completed.

Every juror is required to take two oaths: (1) the *voir dire* as to his qualifications and (2) to try the particular case before the court. Undoubtedly section 221 of the Code of Criminal Procedure refers to the second oath.

Apparently the procedure adopted by the *fiscal* in this case was not strictly in accordance with the provisions of the statute, but it is not shown to be in direct opposition thereto, because, although it is stated that the *fiscal* reserved

his peremptory challenges, it is not shown that they were made after the jury had been sworn to try the case.

Besides, as we have seen, the same statute authorizes the court to vary the order prescribed, and as jurisprudence has established that courts may decide such questions in the exercise of a sound discretion (*People* v. *Montgomery,* 53 Cal., 576; *People* v. *Rodríguez,* 10 Cal., 50; *People* v. *Durrant,* 118 Cal., 179, 197), it would have to be shown that the court abused its discretional power in order that the error which may perhaps have been committed could serve as a ground for the reversal of the judgment.

And, finally, as the *fiscal* of this court aptly says in his brief:

"The record does not show that any juror was peremptorily challenged by the *fiscal* after the court had ruled upon the motion of the defense and pointed out the rule to be observed by the *fiscal* in making peremptory challenges, and as the record does not show this, even in case the court committed error, it would have been immaterial because no substantial right of the appellant was prejudiced."

In his seventh assignment of error the appellant contends also that the court erred in overruling the challenge made by the defense to juror Arturo Godreau.

Upon examination by the defense the said juror stated that he knew of the action prosecuted against Amy for having killed his (the juror's) cousin and that he knew that the present action was for bribery in connection with the Amy case. The defense challenged the juror on the ground of implied partiality based on subdivision 1 of section 227 of the Code of Criminal Procedure, which provides that a juror may be challenged when he is related by consanguinity or affinity within the fourth degree to the person alleged to be injured by the offense charged.

Technically, it cannot be concluded that the person injured in the action for bribery was the same person injured in the murder case, therefore the trial court committed no error in

overruling the challenge to juror Godreau based on subdivision 1 of section 227 of the Code of Criminal Procedure. Besides, as the record shows that later juror Godreau was peremptorily challenged by the defense and that although the defendant exhausted the six peremptory challenges allowed him by law he did not make known in any way his intention of challenging any other juror, we fail to see that any injury resulted thereby to the defendant.

In the case of *The People* v. *Morales, alias Yare Yare,* 14 P. R. R., 227, this court expressed itself as follows:

"The peremptory challenges of the defense do not appear, from the record, to have been exhausted, and no juror was impanelled to whom any definite objection was presented. Unless the defendant has exhausted all his peremptory challenges he cannot complain that any objectionable juror has been placed upon the panel before which he was tried, and the fact that his challenges were exhausted must affirmatively appear from the record. This matter is settled satisfactorily to our minds by the Supreme Court of the United States in the following language:

" 'The complaint is that the trial court, acting under this statute and in accordance with its requirements, compelled the petitioners against their will to submit to a trial by jury that was not impartial, and thus deprived them of one of the fundamental rights which they had as citizens of the United States under the National Constitution, and if the sentence of the court is carried into execution they will be deprived of their lives without due process of law.

" 'In *Hopt* v. *Utah,* 120 U. S., 430, it was decided by this court that when "a challenge by a defendant in a criminal action to a juror for bias, actual or implied, is disallowed, and the juror is thereupon peremptorily challenged by the defendant and excused, and an impartial and competent juror is obtained in his place, no injury is done to the defendant, if until the jury is completed he has other peremptory challenges which he can use." And so in *Hayes* v. *Missouri,* 120 U. S., 68, 71, it was said: "The right to challenge is the right to reject, not to select a juror. If from those who remain an impartial jury is obtained, the constitutional right of the accused is maintained." Of the correctness of these rulings we entertain no doubt. (*Spies* v. *Illinois,* 123 U. S., 168.)' "

Assignments numbers 8, 9, 10, and 11 refer to errors which, in the opinion of the appellant, were committed by the court, (a) in allowing the *fiscal* to ask witness Juan Paraviccini what passed between him and Pillot; (b) in allowing the said witness to testify that on the day Pillot went to ask him for $600 for the jury he gave him the names of some of the jurors, among whom he remembered only Victorio Vázquez; (c) in allowing the said witness to testify that Alfredo Amy had handed him a check for $1,000; and (d) in allowing the said witness to testify that he had delivered the money to Pillot.

The appellant maintains that Pillot is not a party to the action and that his statements and acts could not prejudice the accused. After Paraviccini had testified it was shown that he, Pillot, and others were all combined with the accused, Vázquez, with the design of bribing not only Vázquez, but also other jurors who were to try the case prosecuted against Arturo Amy for the crime of murder in order to obtain a verdict of acquittal. And this being so, section 22 of the Law of Evidence, cited by the appellant, is more against than in favor of the theory maintained by him. The said section reads as follows:

"The rights of a party cannot be prejudiced by the declaration, act, or omission of, or a proceeding against, another, except by virtue of a particular relation between them."

The better practice would have been for the *fiscal* to have proved in the first place the common design, or at least have offered to do so, but as the said common design was proved later, we are of the opinion that the accused was not prejudiced. Besides, for the purpose of showing that the accused was not prejudiced, it should be noted that that fragment of proof adduced from the testimony of witness Paraviccini formed a very insignificant part of the evidence. The acts of bribery were proved later by more direct evidence.

In support of the foregoing we cite the following decisions: *United States* v. *Gooding,* 25 U. S., 460, 470; *People* v. *Geiger,* 49 Cal., 643, 649; *United States* v. *Hiuman,* 26 Fed. Cases, 324, Case No. 15370.

Assignments of error numbers 12, 13, 15, 16, 17 and 18 all refer to questions arising from the admission of evidence. Upon reviewing them we find that no fundamental question is involved in any of them, or any question which could be deemed prejudicial to the accused, or which, while not prejudicial, would require any lengthy study by this court.

Assignments of error numbers 14, 19 and 20 refer to those which, in the opinion of the appellant, the court committed in not sustaining a motion to quash made by the accused after some witnesses for the prosecution had testified, in overruling another motion to quash made by the accused after the prosecution had rested and in refusing to instruct the jury peremptorily to acquit the accused after the evidence on both sides had been examined.

As regards assignment of error number 14, we will say only that the motion to quash was clearly untimely and was properly overruled. And in order to decide the questions raised in assignments of error numbers 19 and 20, we think it best to make a summary of the evidence introduced in order to determine whether or not it is sufficient to prove the guilt of the accused.

Briefly, the evidence introduced by the prosecution is as follows:

*Juan Paraviccini.*—That he does not know the accused, but is acquainted with Diego Pillot. That one day he met Pillot who asked him for $600, saying that it was for the jury serving in the case prosecuted against Arturo Amy; that on the following day he handed him the said amount; that Pillot gave him the names of several jurors, but he remembers only that of Victorio Vázquez; that Pillot showed him a list of the names of the jurors and that the only one he remembers is that of Victorio Vázquez; that he informed

Alfredo Amy of the jury's request for money and that Amy gave him a check for $1,000 which he cashed in order to give the $600 to Pillot; that he gave the money to Pillot and spent the balance of the $1,000 in traveling expenses, etc.

*Alfredo Amy.*—That he was in Guayama on December 16 in connection with the case prosecuted against his son; that Paraviccini approached him in Guayama and informed him that Diego Pillot, representing several jurors, had told him that if they were not given $600 they would not acquit his son; that in order to prevent his son from being unjustly punished he gave him a check for $1,000; that he does not know the accused; that he gave the money to Paraviccini and not to the accused because Diego Pillot demanded it for Victorio Vázquez and other jurors.

*Ventura García.*—That he was one of the regular panel of jurors who served in the District Court of Guayama in December; that on the morning of the 17th of that month Victorio Vázquez and Diego Pillot went to his hat store and asked him to help in the acquittal of Arturo Amy; that he replied that he would act according to the evidence introduced; that Pillot and Vázquez persisted in recommending the acquittal of Amy; that Pillot showed him a roll of bank notes and offered to give him $50 then and $40 later; that he was weak enough to accept the $50 and the offer of a further amount; that he voted for the acquittal of Amy; that after the trial he went to the house of Victorio Vázquez at two o'clock in the morning and there received from his hands the $40 promised.

*Enrique García.*—That he is the son of Ventura García and assists his father in his work; that Victorio Vázquez was in the hat store on December 17 at 10 a. m., having entered from the rear of the house; that Vázquez was accompanied by Diego Pillot.

*Pedro Irene Curet.*—That he was one of the jury which served in the District Court of Guayama in the month of December and that Victorio Vázquez told him that the term for

which they were serving as jurors was very opportune, because
there were two cases against wealthy persons and that he did
not purpose to vote in favor of the defendants unless they gave
him money; that, knowing that the conduct of the jury was
usually criticised by the public, he went to the house of Vic-
torio Vázquez to ascertain the truth; that Vázquez admitted
having received $600 from Pillot and told him that he had
given $40 of it to Bank, $60 to Pillot, $90 to Ventura García,
and $30 to Diego Pillot, and that he did not give anything to
the witness because the latter had told him that he could not
be bought; that Victorio Vázquez became angry and turned
him out of the house, and that he determined to make an
investigation in order to clear up the matter.

*Rafael Hernández.*—That he is the Municipal Judge of
Salinas; that he was in Guayama on December 16; that Diego
Pillot told him that Victorio Vázquez had kept all the money;
that upon meeting Vázquez he asked him what about the ru-
mour that he had kept all the money; that Vázquez replied
that he had kept only the part belonging to him; that he had
learned of the bribery from Diego Pillot. Upon being ques-
tioned as to the nature of his participation in the affair and
his object in reproaching Victorio Vázquez for having kept
nearly all the money intended for the jury, he answered that
he did not know what his object was and that he went to see
Victorio Vázquez to find out whether it was true that he had
kept all the money.

*José María Lota.*—That he is the manager of the branch
of the Crédito y Ahorro Ponceño (a bank) in Guayama and
that between 5 and 6 p. m., (he does not state the day) he paid
Juan Paraviccini the amount of the check shown him by the
*fiscal.*

*Ramón Morales.*—That he is the stenographer of the Dis-
trict Court of Guayama and that during the trial of the case
against Arturo Amy on December 17 Victorio Vázquez served
on the jury.

*Leopoldo Santiago.*—That he is the *fiscal* for the district

of Guayama; that he acted as such in the case against Victorio Vázquez and Diego Pillot for bribery in the trial of which he introduced in evidence a stenographic report of the examination of Victorio Vázquez in order to prove that Vázquez had served in the case prosecuted against Arturo Amy.

*Enrique S. Mestre.*—That he performed the duties of secretary of the District Court of Guayama in the case prosecuted against Arturo Amy for murder and that Victorio Vázquez served on the jury which returned a verdict of acquittal.

### SUMMARY OF THE EVIDENCE FOR THE DEFENSE.

*Alfredo Amy.*—That he does not know Pedro Irene Curet, who may be, perhaps, the person who was at the Coamo Baths at the time the witness was there and who asked him for $550 to pay off a mortgage, trying to intimidate him and to frighten him into letting him have that amount. The witness did not state the nature of Curet's threats and said that he did not give him the money asked for.

*Juan Paraviccini.*—That he had never seen Curet before and that it is not true that he talked with him in Salinas and gave him a letter for Alfredo Amy.

*Rafael Hernández.*—That he went to Guayama with Antonio Romaguera and also with César Amy, a brother of the accused, on the day of the trial of Amy.

*Francisco Secola.*—Corroborates the testimony of the last witness.

*Enrique S. Mestre.*—That Victorio Vázquez was a member of the jury which served on the day following the trial of Amy and that the roll of jurors was called at 9 a. m. as usual.

The documentary evidence consisted of a copy of an information against Diego Pillot and Victorio Vázquez for the crime of bribery.

A careful analysis of the evidence introduced by the prosecution shows that the accused received the bribe referred to in the information. The accused contends that all the direct

evidence against him is based on the testimony of witnesses who partake of the character of accomplices and that therefore they cannot corroborate each other. Both parties agree that witness Ventura García may be considered as an accomplice. We will not stop to discuss whether this conclusion is or is not correct, but granting that it is and even eliminating his testimony entirely, the remaining evidence is sufficient to support the verdict of guilty. For instance, Pedro Irene Curet, who served as juror in the case against Amy and who is not shown to have been bribed, gives a full account of the facts and affirms that Vázquez acknowledged having received $600 from Pillot and having distributed $220 among various other jurors, keeping the balance for himself.

The evidence for the defense tends to contradict in some points that of the prosecution and to introduce some new elements which, in the opinion of the defense, discredit the testimony of certain witnesses for the prosecution. But first the court, in ruling on the motions referred to in assignments of error numbers 19 and 20, and then the jury, in returning its verdict, decided the conflict, if any there were, in favor of The People and gave credit to the testimony of the witnesses for the prosecution. This being so, and it not having been shown that the court or the jury was influenced by passion, partiality, or prejudice or committed any manifest error, their conclusions must be accepted as right and proper in the present case.

Nothing is stated in the brief of the appellant regarding the result of the evidence as to the plea of a former acquittal for the same offense.

The verdict of the jury is drawn up as follows:

"In the District Court for the Judicial District of Guayama, P. R., United States of America; The President of the United States, *ss.* The People of Porto Rico *v.* Victorio Vázquez, Case No. 1975. Crime: Bribery. We, the jury, find the accused, Victorio Vázquez, guilty of the crime of bribery and decide the plea of a former acquittal for the same crime entered by the accused in favor of The People

of Porto Rico, for we understand that the present crime is distinct from the former. Guayama, P. R., May 16, 1913. S. A. Alcaide, foreman of the jury."

We have examined the evidence and it only appears therefrom that there was introduced a copy of an information charging Diego Pillot and Victorio Vázquez with the crime of bribery, consisting in having offered and given to juror Ventura García $90 to influence his vote in the said case against Amy. Nothing is shown as to whether Vázquez was or was not acquitted of the said charge, but if it were shown we should be compelled to hold that the crime charged to Vázquez was distinct from the crime which originated the present case. Even in the same case a juror may commit two distinct crimes of bribery—one as a juror by receiving the bribe directly for the sale of his vote and the other as a private individual acting in combination with the interested party by offering and giving money to another juror for the sale of his vote.

Assignment of error number 21 alleges that "The court erred in charging the jury as follows:  *  *  *  'but if on the other hand Hernández Usera only had some information, verified some facts, had some knowledge of what was occurring at that time and kept silent and did not notify the authorities until some time later, he is not an accomplice.' "

It does not appear from the record that witness Hernández took part in the commission of the crime with criminal intent. His conduct was not that which a good citizen should have observed, but we must hold, in accordance with jurisprudence, that the fact alone that he was aware that the crime was about to be committed and gave no notice thereof, does not make him an accomplice. See the cases of *Clem* v. *The State,* 33 Ind., 418; *Golden* v. *The State,* 18 Tex. App., 637, 639; *People* v. *Woodward,* 45 Cal., 293; *People* v. *Ah Ping,* 27 Cal., 490.

And, finally, the appellant contends that the court erred in

not summing up the case to the jury as provided for in section 233 of the Code of Criminal Procedure as amended in 1911.

We have examined the charge of the judge to the jury and in our opinion it is full and impartial. Besides, there is nothing to show that the accused requested the court to amplify or explain the said charge in any detail which may have been omitted or which may not have been clear.

We can see no fundamental ground, then, for reversing the judgment rendered in this case. The crime committed by the accused is not only grave but is one of those which infuse society with a lack of confidence. If it is possible to purchase the verdict of a jury or the judgment of a court, the very idea of justice falls to the ground.

The judgment appealed from should be affirmed.

*Affirmed.*

Justices Wolf and Aldrey concurred.

Mr. Chief Justice Hernández took no part in the decision of this case.