EL PUEBLO, DEMANDANTE Y APELADO, *v.* VÁZQUEZ, ACUSADO Y
APELANTE.

APELACIÓN procedente de la Corte de Distrito de Guayama
en causa por soborno.

No. 655.—Resuelto en abril 30, 1914.

SOBORNO—DISTINTAS FORMAS DE COMETERLO—DUPLICIDAD DE CARGOS EN LA ACU-
SACIÓN.—De acuerdo con el artículo 105 del Código Penal el delito de soborno
puede cometerse bajo cualquiera de las formas expresadas en el mismo, o sea
pidiendo, recibiendo o conviniendo en recibir cualquiera dádiva, pero cuando
todas dichas formas concurren a la vez y se imputan a una persona como
actos sucesivos de una sola transacción, entonces constituyen un solo delito
público y no adolece la acusación del defecto de duplicidad de cargos.

JURADO—RECUSACIÓN GENERAL DEL PANEL—FUNDAMENTO DE LA MISMA.—La recu-
sación general del panel es la objeción que se hace a todos los jurados que
figuran en la lista presentada al efecto y que se han citado para actuar
durante una sesión del tribunal, o en una vista determinada, y sólo puede
fundarse en que los procedimientos se hayan desviado considerablemente de
las prácticas prescritas para el sorteo y formación de la lista de jurados, o
en que se haya omitido citar intencionalmente a uno o más de los jurados
sorteados.

ID.—RECUSACIÓN GENERAL DEL PANEL—INSACULACIÓN DEL JURADO—PAPELETAS
EN LA URNA MENOS DE 200.—No es causa bastante para la recusación general
del *panel*, el hecho de que en un momento determinado no se encuentren en
la urna 200 papeletas, pues tal hecho, por sí solo, no implica que los comi-
sionados del jurado dejaran de elegir los 200 nombres que ordena la ley,
pudiendo haberse eliminado los nombres de algunos jurados a causa de su
muerte, su ausencia permanente, o su exención del servicio.

ID.—RECUSACIÓN GENERAL DEL PANEL—CITACIÓN DE JURADOS ADEMÁS DE LOS
JURADOS REGULARES.—No es motivo de recusación general del *panel* el hecho
de que además de los 24 jurados del *panel* regular que venían actuando en
una corte de distrito, el juez ordenara la citación de jurados especiales para
sustituir a los que fueran recusados o excusados.

ID.—RECUSACIÓN DE LOS MIEMBROS DEL JURADO—MOMENTO OPORTUNO PARA HA-
CERLO—DISCRECIÓN DEL TRIBUNAL SENTENCIADOR.—Todo jurado presta dos
juramentos, uno para contestar las preguntas que se le hagan con respecto a
su capacidad para servir como tal y otro para actuar especialmente en la
causa que se va a juzgar, debiendo hacerse la recusación después de prestado
el primer juramento y antes de que preste el segundo, pero la corte puede,
en el ejercicio de su facultad discrecional, cuando existen razones suficientes
para ello, variar dicha orden, y cuando se varía, es necesario demostrar que
la corte ha abusado de su poder discrecional para que el error cometido
produzca la revocación de la sentencia.

ID.—RECUSACIÓN DE UN MIEMBRO DEL JURADO POR PARCIALIDAD IMPLÍCITA—PA-
RENTESCO ENTRE EL MIEMBRO DEL JURADO Y LA VÍCTIMA.—Un miembro del
jurado en esta causa por soborno, que manifestó ser primo de la víctima en
la causa de asesinato con motivo del juicio de la cual se cometió el soborno,

fué recusado motivadamente por la defensa basándose en el párrafo 1 del artículo 227 del Código de Enjuiciamiento Criminal, y la corte declaró sin lugar la recusación. *Se resolvió* que técnicamente el caso de dicho jurado no estaba comprendido en el previsto en el precepto legal invocado.

ID.—RECUSACIÓN MOTIVADA DE LOS MIEMBROS DE UN JURADO—RECUSACIÓN PERENTORIA DE LOS MISMOS—ERRORES SIN IMPORTANCIA.—El error que pueda una corte cometer denegando la recusación motivada de los miembros de un jurado, carece de importancia y queda subsanado si el acusado recusa perentoriamente después a los mismos miembros del jurado, o si pudiendo hacerlo no lo hace.

PRUEBAS—DECLARACIÓN CONTRARIA AL ACUSADO PRESTADA POR OTRA PERSONA QUE CON ÉL ESTUVO RELACIONADA.—Los derechos de un acusado no pueden ser perjudicados por la declaración de otra persona, a menos que se demuestre, como en este caso, que el acusado y esa otra persona estuvieron combinados en la transacción fraudulenta a que se refiere la declaración. En tales casos la mejor práctica es probar primero la relación entre el acusado y la persona que va a declarar.

SOBRESEIMIENTO DE LA ACUSACIÓN—MOMENTO OPORTUNO PARA PEDIRLO.—Es generalmente improcedente por extemporánea una moción de sobreseimiento presentada por el acusado después de declarar sólo algunos testigos del Fiscal.

VEREDICTO DEL JURADO—PRUEBAS CONTRADICTORIAS.—El veredicto de culpabilidad de un jurado resolviendo el conflicto existente en la prueba contradictoria y que sirve de base a una sentencia condenatoria, debe ser aceptado por este tribunal, a menos que se demuestre que la corte o el jurado actuaron movidos por pasión, parcialidad o prejuicio, o que cometieron algún error manifiesto.

FORMER JEOPARDY—ABSOLUCIÓN ANTERIOR POR EL MISMO DELITO—SOBORNO COMETIDO EN DISTINTAS FORMAS.—Para que proceda la defensa de absolución anterior por el mismo delito (*former jeopardy*) es necesario que haya identidad entre los dos delitos. En un mismo proceso un jurado puede cometer dos distintos delitos de soborno, uno como tal jurado, recibiendo directamente el soborno por vender su voto y otro como individuo particular, actuando en combinación con la parte interesada, ofreciendo y dando dinero a otro jurado por la venta del suyo.

DECLARACIÓN DE UN CÓMPLICE—CONOCIMIENTO DE LA COMISIÓN DEL DELITO.—El hecho de que una persona esté enterada de que iba a cometerse un delito y no diera cuenta de ello, por sí solo, no hace de él un cómplice y su declaración es admisible contra el acusado.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, fiscal.*

Abogados del apelante: *Sres. F. Cervoni Gely, Eugenio Benítez Castaño y M. Benítez Flores.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un recurso de apelación contra sentencia de la Corte de Distrito de Guayama por virtud de la cual se condenó a Victorio Vázquez, como autor de un delito de so-

borno, a sufrir la pena de diez años de presidio con trabajos forzados.

La acusación, en lo pertinente, dice así:

"El Fiscal formula acusación contra Victorio Vázquez por un delito de soborno (*felony*) comprendido en el artículo 105 del Código Penal, y cometido de la manera siguiente: 'El acusado Victorio Vázquez allá por el día 16 de diciembre de 1912 y en la ciudad de Guayama, que forma parte de este distrito judicial, actuando como jurado ante esta corte de distrito, ilegal, voluntaria, corrupta y criminalmente solicitó, pidió, recibió y convino en recibir un soborno de más de $100 de Alfredo Amy, con la intención y el propósito de que tal cantidad de dinero había de influir en su voto, opinión y decisión como tal jurado a favor de Arturo Amy, un hijo del mencionado Alfredo Amy, que estaba acusado allí y entonces del delito de asesinato en segundo grado; y este acusado Victorio Vázquez, habiendo sido nombrado, escogido, citado debidamente para actuar como jurado del *panel* regular de esta corte de distrito durante el mes de diciembre del año 1912, pidió, recibió y convino en recibir criminalmente tal cantidad de dinero bajo el convenio y la promesa de votar como tal jurado a favor de la absolución de Arturo Amy en el caso de *El Pueblo de Puerto Rico* v. *Arturo Amy,* por delito de asesinato en 2°. grado, cuyo juicio estaba señalado para el día 17 de diciembre de 1912, y tal promesa de absolución la hizo el acusado a sabiendas de que había de someterse como tal jurado la cuestión de la inocencia o culpabilidad del mencionado Arturo Amy.' "

El acusado excepcionó la acusación alegando: 1, que los hechos consignados en la misma no constituían delito público; 2, que era ininteligible, y 3, que imputaba más de un delito. El Fiscal corrigió entonces la acusación sustituyendo la palabra "dió" que figuraba en la misma, por la palabra "pidió," y la corte, después de oir los argumentos de ambas partes, declaró sin lugar la excepción del acusado.

Este, en su alegato presentado ante esta Corte Suprema, sostiene que la corte erró al decidir de tal modo las cuestiones suscitadas. A nuestro juicio, la corte sentenciadora procedió correctamente.

El artículo 105 del Código Penal, dice así:

"Todo funcionario judicial, jurado, árbitro u otra persona auto-

rizada por la ley para oir o resolver una cuestión o controversia, que pidiere, recibiere, o conviniere en recibir cualquier dádiva, en la inteligencia de que ésta habrá de inclinar su voto, dictamen o fallo en cualquier asunto o cuestión que se hubiere sometido o se sometiere a su resolución, incurrirá en pena de presidio por uno a diez años.''

Basta comparar el anterior artículo con la acusación formulada, para concluir sin esfuerzo alguno que la última imputa al acusado un hecho claramente previsto y castigado en el primero.

La acusación no es ininteligible. El uso de la palabra "dió" en vez de "pidió," introducía ciertamente confusión, pero fué corregido a su tiempo, debidamente, por el Fiscal. Tal vez la acusación expresa más de lo necesario para entenderse perpetrado el delito, pero esto en manera alguna puede estimarse como un defecto que la invalide.

Tampoco imputa la acusación más de un delito. Sostiene el apelante que pedir una dádiva es un delito, recibirla otro y otro también el convenir en recibirla. Estamos conformes en que el delito puede cometerse bajo cualquiera de dichas formas: pidiendo, recibiendo o conviniendo en recibir, pero cuando todos a la vez concurren y se imputan a una persona como actos sucesivos de una sola transacción, entonces constituyen como en este caso un solo delito público.

Resueltas, correctamente como hemos visto, las cuestiones previas suscitadas en relación con la acusación, el acusado alegó que era inocente y que había sido absuelto por el mismo delito, y solicitó juicio por jurado.

Señalado día para la vista, se promovieron diferentes cuestiones con motivo de la constitución del jurado. Dichas cuestiones se presentan a este tribunal en los señalamientos de error 3, 4, 5, 6 y 7. Veamos si están o nó bien fundadas.

Sostiene el apelante que la corte sentenciadora erró al desestimar su recusación general del *panel,* (a) porque el *panel* fué insaculado de 180 nombres en vez de 200 como dispone la ley, y (b) porque citados los 24 jurados regulares, no creyéndolos suficientes la corte ordenó que se insacularan seis

más y luego 20 más para entender exclusivamente en esta
causa.

En cuanto a la recusación general, diremos que de la trans-
cripción no aparece comprobada la certeza del hecho en que
se funda, a saber: que sólo existían 180 jurados en la urna,
y que siendo esto así, no tenemos base en que apoyarnos para
decidir la cuestión suscitada. Pero, aun cuando se hubiera
demostrado que sólo existían en la urna 180 jurados cuando
se insacularon los que debían intervenir en este caso, tal hecho,
por sí solo, no puede servir de base para una recusación del
*panel.*

De acuerdo con la ley, recusar el *panel* es la objeción que
se hace a todos los jurados que figuran en la lista presentada
al efecto y que se han citado para actuar durante una sesión
del tribunal o en una vista determinada. Dicha recusación
sólo puede fundarse en que los procedimientos se hayan des-
viado considerablemente de las prácticas prescritas para
el sorteo y formación de la lista de jurados, o en que se haya
omitido citar intencionalmente a uno o más de los jurados
sorteados. Arts. 210, 211 y 212 del Código de Enjuiciamiento
Criminal.

El que en un momento determinado no se encuentren en la
urna doscientas papeletas, no implica que los comisionados
de jurados dejaran de elegir los 200 nombres que ordena la
ley. Ellos pudieron preparar la lista completa de 200 jura-
dos, lista destinada a estar en vigor durante todo un año, y
luego ocurrir ciertos hechos determinantes de la eliminación
de algunos nombres. La misma ley prevé este caso cuando
dispone que si en las boletas extraídas de la urna apareciere
el nombre de algún individuo que hubiere fallecido o que hu-
biere mudado permanentemente de residencia fuera del dis-
trito, o que estuviere exento del servicio de jurado, y tal hecho
se comprobare a satisfacción de los jueces, el nombre de dicho
individuo se suprimirá de la lista de jurados y otro jurado
se sacará por suerte para reemplazarlo. Art. 200 del Código
de Enjuiciamiento Criminal. Y una vez que el nombre del

jurado ha sido suprimido de la lista, es natural que la boleta que lo contiene no vuelva al seno de la urna.

Y en cuanto a que el juez mandó citar además de los 24 jurados del *panel* regular que actuaba, otros especiales para esta causa, diremos que nada de incorrecto encontramos en tal conducta.   En muchas ocasiones, atendida la importancia del caso pendiente de juicio, el juez puede prever el hecho de que han de ocurrir muchas excusas y recusaciones, y, a fin de que no sufra dilación innecesaria la administración de la justicia, puede ordenar que se cite un número de jurados suficientes para constituir el que ha de juzgar la causa.   Y así puede comenzarse la formación del jurado con los regulares citados de acuerdo con el artículo 199 del Código de Enjuiciamiento Criminal, y continuarse, si es necesario, con los otros convocados especialmente.   Art. 202 del propio código.

Alega también el apelante que la corte erró al no obligar al Fiscal a hacer sus recusaciones en el acto en que se presentaba cada jurado.   Parece que el Fiscal pospuso sus recusaciones perentorias y la corte admitió tal procedimiento, concediendo igual derecho a la defensa.

El artículo 221 del Código de Enjuiciamiento Criminal dispone que la recusación deberá hacerse al presentarse el miembro del jurado, y antes de que se le tome juramento para entender en la causa, y dispone también que, si para ello hubiera razón, el tribunal puede permitir que esto se haga después del juramento y antes de que el jurado se complete.

Todo jurado presta dos juramentos, uno para contestar las preguntas que se le hagan con respecto a su capacidad para servir como tal y otro para actuar especialmente en la causa que se va a juzgar.   Indudablemente que el juramento a que se refiere el artículo 221 del Código de Enjuiciamiento Criminal que hemos citado, es el segundo.

Al parecer el procedimiento adoptado por el Fiscal en este caso no siguió estrictamente lo prescrito en la ley, pero no consta que estuviera en completa oposición a la misma, pues

si bien se consigna que el Fiscal pospuso sus recusaciones perentorias, no se demuestra que tal posposición se hiciera para después de haberse tomado juramento al jurado para actuar en la causa.

Además, como hemos visto, la misma ley autoriza al juez para variar el orden que prescribe, cuando existen razones suficientes para ello, y como la jurisprudencia ha establecido que los jueces pueden resolver estas cuestiones ejercitando una sana discreción, *People* v. *Montgomery,* 53 Cal., 576; *People* v. *Rodríguez,* 10 Cal., 50; *People* v. *Durrant,* 116 Cal., 179, 197, tendría que demostrarse que la corte había abusado de su poder discrecional, para que el error que pudiera haber tal vez cometido sirviera de base a la revocación de la sentencia.

Y, por último, como bien dice el Fiscal de esta Corte Suprema en su alegato, "el récord no demuestra que, después de resolver la corte la moción de la defensa y de invocar la regla que debía observarse en el empleo de las recusaciones perentorias por el Fiscal, éste hubiere recusado perentoriamente a ningún jurado, y no apareciendo así del récord, aun en el caso de que la corte hubiera incurrido en algún error, éste hubiera sido inmaterial, por no perjudicar ningún derecho substancial del apelante."

Sostiene también la parte apelante, en su séptimo señalamiento de error, que la corte erró al desestimar la recusación motivada que hizo la defensa del jurado Arturo Godreau.

Examinado por la defensa, dicho jurado manifestó que conocía la causa que se vió en la corte contra Amy por haber dado muerte a un primo suyo (del jurado) y que sabía que el presente juicio era por soborno en relación con el caso de Amy. La defensa recusó al jurado por parcialidad implícita, basándose en el No. 1 del artículo 227 del Código de Enjuiciamiento Criminal, que prescribe la procedencia de tal recusación cuando el jurado sea pariente por consanguinidad o afinidad dentro del cuarto grado de la persona que se alega que ha sido agraviada por el delito que se denuncia.

Técnicamente no puede concluirse que la persona agraviada en el caso de soborno, fuera la misma que en el caso de asesinato, y por tanto la corte sentenciadora no cometió error al desestimar la recusación motivada del jurado Godreau, basada en el número 1 del artículo 227 del Código de Enjuiciamiento Criminal. Además, demostrando el récord que el jurado Godreau fué luego recusado perentoriamente por la defensa, y que si bien ésta llegó a hacer uso de las seis recusaciones perentorias que le concedía la ley, no hizo constar en modo alguno su intención de recusar a algún otro jurado, no vemos que se haya ocasionado finalmente perjuicio al acusado.

Esta Corte Suprema en el caso de *El Pueblo* v. *Morales (a) Yare. Yare,* 14 D. P. R., 234, 244, se expresó así:

"No aparece de los autos que las recusaciones perentorias de la defensa hayan sido agotadas y ningún jurado contra el que se había presentado una objeción definitiva, fué incluído en el *panel.* A menos que el acusado haya agotado todas sus recusaciones perentorias, no puede quejarse de que un jurado inadmisible haya sido incluído en el *panel,* por el cual fué juzgado, y el hecho de que sus recusaciones fueron agotadas, debe afirmativamente constar en los autos. A nuestro juicio, este punto ha sido resuelto de un modo satisfactorio por el Tribunal Supremo de los Estados Unidos, en los siguientes términos:

" ' La queja se refiere a que el tribunal sentenciador, procediendo en virtud de este estatuto, y con arreglo a sus disposiciones, obligó a los peticionarios, contra su voluntad, a someterse a un juicio por un jurado que no era imparcial, privándolos así de uno de los derechos fundamentales que tenían, como ciudadanos de los Estados Unidos, con arreglo a la Constitución Nacional, y alegándose que si la sentencia del tribunal fuera ejecutada, serían privados de su vida sin el debido procedimiento legal.

" 'En la causa de *Hopt* v. *Utah,* 120 U. S., 430, se declaró por este tribunal, que "cuando en una causa criminal no se admite la recusación de un jurado por parte del acusado a causa de parcialidad manifiesta o implícita, y el jurado es entonces recusado de un modo perentorio por el acusado, y excusado, y se consigue un jurado imparcial y competente, en su lugar, ningún perjuicio ha sido causado al acusado, si hasta que se complete el jurado tiene otras recusaciones perentorias que pueda utilizar." Y de acuerdo con eso en

*Hayes* v. *Missouri*, 120 U. S., 68, 71, se ha dicho "El derecho de recusar es el derecho de rechazar y no de seleccionar a un jurado. Si de aquellos que quedan se obtiene un jurado imparcial, entonces el derecho constitucional del acusado ha sido sostenido." No abrigamos ninguna duda con respecto a esta decisión.'

"*Spies* v. *Illinois*, 123 U S., 168."

Los señalamientos de error 8, 9, 10 y 11 se refieren a los cometidos por la corte, a juicio del apelante, (*a*) al permitir que el Fiscal preguntara al testigo Juan Paraviccini, lo que pasó entre él y Pillot; (*b*) al permitir al mismo testigo que declarara que el día que Pillot fué a pedirle 600 pesos para el jurado, le nombró algunos de los jurados, entre los cuales sólo recordaba a Victorio Vázquez; (*c*) al permitir que el mencionado testigo declarara que Don Alfredo Amy le había entregado un cheque de $1,000, y (*d*) al permitir al referido testigo que declarara que había entregado el dinero a Pillot.

Sostiene el apelante que Pillot no es parte en el proceso y que sus declaraciones y hechos no podían perjudicar al acusado. Después de declarar Paraviccini, se demostró que él, Paraviccini, Pillot y otros, estaban todos combinados con el acusado Vázquez con el designio de sobornar no sólo a Vázquez si que también a otros jurados que habían de actuar en el caso seguido contra Arturo Amy por el delito de asesinato, a fin de obtener un veredicto absolutorio. Y siendo esto así, el artículo 22 de la Ley de Evidencia que invoca la parte apelante, está más bien en contra que a favor de la teoría que sostiene. Dicho artículo dice así:

"Los derechos de una de las partes no pueden ser perjudicados por la declaración, acto, u omisión de otra, o por algún procedimiento contra ésta, a no existir determinada relación entre ellos."

Mejor práctica hubiera sido por parte del Fiscal la de haber probado en primer término el designio común, o por lo menos haber ofrecido hacerlo así; mas como luego quedó demostrado tal designio común, entendemos que el acusado no fué perjudicado. Además, a los efectos de demostrar la no existencia de perjuicio para el acusado, deberá notarse

que este fragmento de prueba aportado por la declaración
del testigo Paraviccini, era una parte muy poco importante
de la misma. Los hechos del soborno quedaron luego demos-
trados por prueba más directa.

En apoyo de lo que dejamos expuesto, citaremos las si-
guientes decisiones: *United States* v. *Gooding,* 25 U. S., 460,
470; *People* v. *Geiger,* 49 Cal., 643, 649, y *United States* v.
*Hiuman,* 26 Fed. Cases, 324, case No: 15370.

Los señalamientos de error 12, 13, 15, 16, 17, 18, se refie-
ren todos a cuestiones suscitadas con motivo de la práctica
de las pruebas. Los hemos examinado y en ninguno de ellos
está envuelta cuestión alguna fundamental, o que pueda esti-
marse como perjudicial al acusado, o que sin serlo requiera
un detenido estudio por parte de esta corte.

Los señalamientos de error 14, 19 y 20 se refieren a los
cometidos por la corte, a juicio del apelante, al no declarar
con lugar una moción de sobreseimiento presentada por el
acusado después de deponer algunos testigos del Fiscal, al
desestimar otra moción de sobreseimiento presentada por el
acusado al terminar la práctica de la prueba de la acusación,
y al negarse, terminada la prueba de ambas partes, a ordenar
al jurado que absolviera perentoriamente al acusado.

Con respecto al señalamiento de error No. 14, nos limita-
remos a decir que la moción de sobreseimiento fué claramente
extemporánea y propiamente declarada sin lugar. Y para
resolver las cuestiones suscitadas en los señalamientos de
error Nos. 19 y 20, nos parece que el mejor método que debe
seguirse es el de hacer un resumen de la prueba practicada,
a fin de resolver si es o nó suficiente para demostrar la cul-
pabilidad del acusado.

La evidencia presentada por parte del Fiscal, en resu-
men, es como sigue:

Juan Paraviccini.—Declara que no conoce al acusado, pero
sí a Diego Pillot. Que un día se vió con él y Pillot le pidió
$600 diciéndole que era para el jurado que actuaba en la
causa seguida contra Arturo Amy; que al día siguiente le

entregó dicha cantidad; que Pillot le dió los nombres de varios jurados, pero que él sólo se acuerda del de Victorio Vázquez; que Pillot le enseñó una lista de jurados y que del único que se acuerda es de Victorio Vázquez; que informó a Don Alfredo Amy de la petición de dinero del jurado, y que el Sr. Amy le dió un cheque por $1,000 que él hizo efectivo para entregarle los $600 a Pillot; que le dió el dinero a Pillot y que el resto de los $1,000 los empleó en gastos de viaje, etc.

ALFREDO AMY.—Declara que estaba en Guayama el 16 de diciembre con motivo de la causa seguida contra su hijo; que en Guayama se le presentó Paraviccini informándole que Diego Pillot, hablándole en nombre de varios jurados, le dijo que si no les daban $600 no sacaban absuelto a su hijo; que para evitar que castigaran injustamente a su hijo, le dió un cheque por $1,000; que no conoce al acusado; que fué a Paraviccini y no al acusado a quien le entregó el dinero, porque Diego Pillot lo exigía para Victorio Vázquez y otros jurados.

VENTURA GARCÍA.—Declara que formaba parte del *panel* regular de jurados que actuó en la Corte de Distrito de Guayama en diciembre; que en la mañana del 17 de dicho mes se presentaron en su sombrerería Victorio Vázquez y Diego Pillot a suplicarle que contribuyera a soltar a Arturo Amy; que su respuesta fué que él lo juzgaría de acuerdo con la prueba que se aportase; que Pillot y Vázquez insistieron en la recomendación de absolver a Amy; que Pillot le mostró un paquete de billetes de banco y le ofreció darle $50 de pronto y $40 más tarde; que él cometió la debilidad de aceptar los $50 y el ofrecimiento de mayor suma; que absolvió a Amy; y que al terminarse el juicio a las dos de la mañana fué a casa de Victorio Vázquez y allí recibió de manos de éste los $40 ofrecidos.

ENRIQUE GARCÍA.—Declara que es hijo de Ventura García y que ayuda a su padre en el trabajo; que Victorio Vázquez estuvo en la sombrerería el 17 de diciembre a las 10 a. m.

entrando por la parte de atrás de la casa; que Vázquez venía con Diego Pillot.

Pedro Irene Curet.—Declara que formaba parte del jurado que actuó en la Corte de Distrito de Guayama en el mes de diciembre, y que Victorio Vázquez le dijo que el término en que actuaban de jurados era muy conveniente porque habían dos juicios contra gente de dinero, y que él no pensaba dar su voto en favor de los acusados, si no le deban dinero; que enterado de que el público censuraba la conducta del jurado, fué a casa de Victorio Vázquez a indagar la verdad; que Vázquez le confesó haber cogido $600 de manos de Pillot, diciéndole que de esa cantidad había dado $40 a Bank, $60 a Pillot, $90 a Ventura García y $30 a Diego Pillot, y que al testigo no le había dado nada porque le dijo que él no se vendía; que Victorio Vázquez, incomodado, lo despidió de la casa, y que él se propuso hacer una investigación para el esclarecimiento de los hechos.

Rafael Hernández.—Declara que es Juez Municipal de Salinas; que estuvo en Guayama el día 16 de diciembre; que Diego Pillot le informó que Victorio Vázquez se había quedado con todo el dinero; y que al encontrarse con Vázquez le dijo que qué era eso que decían que se había quedado con todo el dinero; que Vázquez le contestó que solamente había cogido la parte que le correspondía; y que se había enterado del soborno por Diego Pillot. Preguntado acerca del carácter de sus gestiones y sobre su objeto al reprochar a Victorio Vázquez por haberse quedado con casi todos los chavos, del jurado, contestó que no sabía lo que él mismo pretendía, y que se dirigió a Victorio Vázquez para averiguar si era cierto que se había quedado con todos los chavos.

José María Lota.—Declara que es gerente de la Sucursal del Crédito y Ahorro Ponceño en Guayama, y que entre 5 y 6 de la tarde (no dice de qué día) le pagó a Juan Paraviccini el cheque que le muestra el Fiscal.

Ramón Morales.—Declara que es taquígrafo de la Corte de Distrito de Guayama, y que en el juicio seguido contra

Arturo Amy el 17 de diciembre, Victorio Vázquez actuó de jurado.

LEOPOLDO SANTIAGO.—Declara que es Fiscal del Distrito de Guayama; que actuó como tal en el caso seguido contra Victorio Vázquez y Diego Pillot por soborno, en el que presentó como prueba un récord taquigráfico del examen del jurado Victorio Vázquez, para probar que éste había intervenido en la causa seguida contra Arturo Amy.

ENRIQUE S. MESTRE.—Declara que actuó de Secretario de la Corte de Distrito de Guayama en la causa por asesinato seguida contra Arturo Amy, y que Victorio Vázquez formaba parte del jurado que dió un veredicto de inculpabilidad.

Y por parte de la defensa, también en resumen, así:

ALFREDO AMY.—Declara que no conoce a Pedro Irene Curet, quien tal vez sea un individuo que estuvo en los Baños de Coamo donde se encontraba el testigo a pedirle $550 para pagar una hipoteca, tratando de imponérsele y meterle miedo para sacarle esa cantidad. El testigo no expresa en qué consistieron las amenazas de Curet y dice que no le dió la suma que pedía.

JUAN PARAVICCINI.—Declara que sólo ha visto a Curet en la corte y que no es cierto que hablara con él en Salinas y le diera una carta para Don Alfredo Amy.

RAFAEL HERNÁNDEZ.—Declara que el día del juicio de Amy fué a Guayama con Antonio Romaguera y también con César Amy, hermano del acusado.

FRANCISCO SÉCOLA.—Confirma lo dicho por el anterior testigo.

ENRIQUE S. MESTRE.—Declara que Victorio Vázquez se encontraba formando parte del jurado que actuó al día siguiente de verse la causa de Amy y que a las nueve de la mañana se pasó lista como de costumbre a los señores jurados.

La prueba documental consistió en copia de un acta de acusación contra Diego Pillot y Victorio Vázquez por delito de soborno.

Analizada cuidadosamente la prueba de cargo practicada,

demuestra que el acusado recibió el soborno a que se refiere la acusación. El acusado sostiene que toda la prueba directa que pueda existir en contra suya se basa en declaraciones prestadas por testigos que tienen el carácter de cómplices y que por tanto no pueden corroborarse entre sí. Ambas partes aceptan que el testigo Ventura García puede considerarse como cómplice. No nos detendremos a examinar si esta conclusión es o nó correcta, pero aceptado que lo sea y aun prescindiendo por completo de su declaración, el resto de la prueba es suficiente para sostener el veredicto de culpabilidad. Pedro Irene Curet, por ejemplo, que actuó como jurado en la causa seguida contra Amy y que no consta que fuera sobornado, da una descripción completa de los hechos y afirma que Vázquez admitió haber recibido de Pillot $600, distribuyendo $220 entre otros varios jurados, y reteniendo la cantidad restante para sí.

La prueba de descargo tiende a contradecir en algunos extremos la de cargo y a aportar algunos nuevos elementos que a juicio de la defensa desacreditan el testimonio de ciertos testigos del Fiscal. Mas, primero la corte al resolver las mociones a que se refieren los errores 19 y 20 y luego el jurado al rendir su veredicto, resolvieron el conflicto, si alguno hubo, en favor de El Pueblo y dieron crédito a los testigos de la acusación, y siendo ello así y no habiéndose demostrado que la corte o el jurado actuaran movidos por pasión, parcialidad o prejuicio, o que cometieran algún error manifiesto, sus conclusiones deben aceptarse como las procedentes y justas en este caso.

Nada se consigna en el alegato de la parte apelante con respecto al resultado de la prueba en cuanto a la alegación de absolución anterior por el mismo delito.

El veredicto del jurado aparece redactado así:

"EN LA CORTE DE DISTRITO DEL DISTRITO JUDICIAL DE GUAYAMA, P. R. Estados Unidos de América. El Presidente de los Estados Unidos, S. S.—El Pueblo de Puerto Rico contra Victorio Vázquez. Causa No. 1975. DELITO: Soborno.—Nosotros los señores del jurado decla-

ramos al acusado Victorio Vázquez culpable del delito de soborno y resuelve a favor de El Pueblo de Puerto Rico la alegación de la defensa de haber sido absuelto el acusado anteriormente por el mismo delito, por entender el jurado que el presente delito es distinto al anterior. Guayama, P. R., 16 de mayo de 1913. S. A. Alcaide, presidente del jurado.''

Hemos examinado la prueba y de ella sólo aparece que se presentó la copia de una acusación en la cual se imputa a Diego Pillot y a Victorio Vázquez el delito de soborno consistente en haber ofrecido y dado al Jurado Ventura García $90 para inclinar su voto en el repetido caso de Amy. Nada consta con respecto a si el acusado Vázquez fué o nó absuelto de la indicada acusación, pero en el caso de que constara, tendríamos que resolver que el delito imputado a Vázquez era distinto del que dió origen a esta causa. Aunque se trate del mismo proceso, un jurado que en él actúe puede cometer dos distintos delitos de soborno, uno como tal jurado, recibiendo directamente el soborno por vender su voto, y otro como individuo particular actuando en combinación con la parte interesada, ofreciendo y dando dinero a otro jurado por la venta del suyo.

El señalamiento de error 21 se refiere a que ''La corte cometió error dando al jurado esta instrucción: '\* \* \* pero si por otro lado, el Sr. Hernández Usera solamente tenía algunas noticias, averiguó algunos hechos, tenía algún conocimiento de lo que pasaba en aquellos momentos y guardó silencio y no dió aviso a las autoridades hasta algún rato después entonces no es cómplice.' ''

No aparece de los autos que el testigo Hernández interviniera con intención criminal en la realización del delito. Su conducta no fué la que hubiera seguido un buen ciudadano, pero debemos resolver, de acuerdo con la jurisprudencia, que el hecho de que estuviera enterado de que iba a cometerse el delito y no diera cuenta de ello, no hace, por sí solo, de él un cómplice. Véanse los casos de *Clem* v. *The State,* 33 Ind., 418;

*Golden* v. *The State,* 18 Tex. App.; 637, 639; *People* v. *Woodward,* 45 Cal., 293; *People* v. *Ah Ping,* 27 Cal., 490.

Y, por último sostiene la parte apelante que la corte cometió error no haciendo una resumen del caso ante el jurado tal como lo determina el artículo 233 del Código de Enjuiciamiento Criminal, enmendado en 1911.

Hemos examinado las instrucciones del juez al jurado y a nuestro juicio son completas e imparciales. Además, nada consta con respecto a que el acusado hiciera alguna petición a fin de que el juez ampliara o explicara dichas instrucciones en algún detalle que se hubiera omitido o que estuviera falto de claridad.

Ningún motivo fundamental existe, pues, a nuestro juicio, para revocar la sentencia dictada en este caso. El crimen cometido por el acusado no solamente es grave, sino de aquellos que introducen la desconfianza en la sociedad. Si es posible comprar el veredicto de un jurado o el fallo de un tribunal, el concepto mismo de la justicia cae por su base.

Debe confirmarse la sentencia apelada.

*Confirmada la sentencia.*

Jueces concurrentes: Sres. Asociados Wolf y Aldrey.

El Juez Presidente Sr. Hernández no intervino en la resolución de este caso.