## THE PEOPLE v. RODRIGUEZ.

An objection taken to the panel of a grand jury that had been summoned by the sheriff of the county, under an order of the Court, after the commencement of the term, on the ground that said jury had not been drawn in the manner pointed out in section five of the Act concerning Jurors, passed May 3, 1852, is not well taken.

Nor is an objection well taken to the panel of a trial jury, on the ground that such jury were summoned by order of the Court, after the commencement of the term.

An indictment which substantially pursues the form laid down in the statute is sufficient.

On a trial for murder, eleven jurors were examined, passed upon by both the State and the defence, and sworn. These jurors were sworn to try the case, without objection of counsel for defendant. The twelfth juror was accepted by both parties. The counsel for defendant, before the last juror was sworn, offered to interpose a peremptory challenge to one of the eleven sworn, without naming him, or stating any fact that had come to their knowledge since he was sworn : *Held*, that the offer to challenge was properly refused, as no good cause was shown.

Where admissions made by the defendant are proven on the trial, the objection that it is not first shown that such admissions were made freely, and not under the influence of fear or other improper inducements, should be made to the introduction of the testimony.

In not making such objections at the proper time, the *onus* of proving the ground of such objection is thrown upon the defendant.

APPEAL from the District Court of the Eleventh Judicial District, County of Placer.

The defendant was indicted for the crime of murder in the first degree. The indictment is as follows :

*The People of the State of California* v. *Martin Rodriguez and John Ballinger*—In the Court of Sessions of the County of Placer, February Term, 1858.—Martin Rodriguez and John Ballinger are accused by the grand jury of the county of Placer, by this indictment, of the crime of murder. The said Martin Rodriguez and John Ballinger, on or about the twentieth day of December, A. D. 1857, and before the finding and presentation of this indictment, did, at the county of Placer, to wit, at a certain cabin near the South Fork of the North Fork of the American River, from one-half to three-quarters of a mile above Euchre Bar, in township number four of said county of Placer, with force and arms, and of malice aforethought, feloniously, willfully, unlawfully, deliberately, and with premeditation, and without just cause or provocation, commit the offence of murder of the first degree, upon the person of one Andrew Hollenburgh, and that the said Martin Rodriguez, a certain gun, of a kind known as a rifle, made of iron and steel, and of length of barrel of about twenty-eight inches, then and there charged with gunpowder and a leaden bullet, which gun, he the said Martin Rodriguez in his hands then and there had and held against, at, and upon him, the said Andrew Hollenburgh, then and there feloniously, willfully, unlawfully, deliberately, and with premeditation, and of his malice aforethought, did discharge and shoot off, and he, the said Martin Rodriguez, with the leaden bullet (ball) aforesaid, by force of the gunpower aforesaid out of the said gun, by him, the said Martin Rodriguez, so as aforesaid discharged and shot off, him, the said Andrew Hollenburgh, in and upon the left side of the belly of him, the said Andrew Hollenburgh, about one inch below the navel, and from two to three inches to the left of the navel of him, the said Andrew Hollenburgh, then and there with force and arms, feloniously, willfully, unlawfully, deliberately, with premeditation, and of his malice aforethought, did strike, penetrate, and wound, giving unto the said Andrew Hollenburgh then and there, and with the leaden bullet aforesaid, out of the said gun so as aforesaid discharged and shot off, in and upon the left side of the belly as aforesaid of the said Andrew Hollenburgh, one mortal wound, of the breadth of about three-quarters of an inch, and the depth of from six to twelve inches, said bullet, by the means aforesaid, passing nearly through the body of him, the said Andrew Hollenburgh; of which said mortal wound the said Andrew Hollenburgh, on and from the period of receiving said mortal wound as aforesaid, until about the twenty-first day of December, A. D. 1857, did languish, and languishing did live, and on which said last-named day, to wit, about the twenty-first day of December aforesaid, he, the said Andrew Hollenburgh, at Placer county aforesaid, of the mortal wound aforesaid, did die. And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Martin

Rodriguez, at the time and place aforesaid, unlawfully, and in manner and form, and with the intent and weapon aforesaid, did commit the offence of murder of the first degree, by murdering as aforesaid the said Andrew Hollenburgh, against the peace and dignity of the people of the State of California, and contrary to the statute in such case made and provided.

The first objection raised by the defendant in the Court below, was a challenge to the entire panel of the grand jury.

The grand jury was empanneled and duly summoned by the sheriff of the county, under an order of the Court, made after the commencement of the term. The challenge to the panel was made on the following grounds:

1. The requisite number of ballots were not drawn from the jury-box of the county, as prescribed law.

2. The notice of the drawing of the grand jury was not given as prescribed by law.

3. The drawing was not had in presence of the officer or officers designated by law, and as set forth and required in section one hundred and eighty-two of an Act to regulate Proceedings in Criminal Cases, passed May 1, 1851.

The challenge was not sustained by the Court, and defendant excepted.

The defendant then demurred to the indictment on the following grounds:

1. That the grand jury by which it was found had no legal authority to inquire into the offence charged, by reason of its not being within the local jurisdiction of the county, it not appearing from the indictment that the offence charged was committed within the State of California.

2. That it does not substantially conform to the requirements of sections two hundred and thirty-seven and two hundred and thirty-eight of the Criminal Practice Act of said State, in this, that there is no statement of the acts constituting the offence, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended. Defendant is charged with the crime of murder of the first degree, but the particular circumstances attending the commission of the offence are not stated. It is not shown by what kind of willful, deliberate, and premeditated killing, the offence was perpetrated, and there are no circumstances appearing, showing a malignant and abandoned heart, or that if the circumstances stated be true, that the offence was or is that of murder of the first degree, under the statute of said state. The indictment charges the wound to have been inflicted about the twentieth of December, and the death to have occurred about the twenty-first of December, and subsequently charges the offence to have been

committed "at the time aforesaid," without specifying which of said times.

3. That the indictment, in effect, charges the commission of more than one offence.

4. That the facts stated do not constitute a public offence.

5. That the indictment contains matters which, if true, constitute a legal bar to the prosecution.

The demurrer was overruled by the Court, and defendant excepted. Several exceptions were taken by the defendant during the progress of the trial, all of which appear ·in the opinion of the Court.

The Court charged the jury as follows :

"It is the right that the prosecution or defence has, in a case of this kind, to demand that everything that may be said to you in the way of a charge from the Court, shall be reduced to writing. The defendant in this case has thought proper, for reasons satisfactory to himself, to require the charge to be thus prepared. This necessarily imposes upon the Court an immense amount of labor, and makes it impossible, with the time I have had since the demand was made, for me to examine, as fully as I could otherwise have done, the several legal propositions that have been discussed and insisted upon by both parties.

"You are empanneled to inquire whether this defendant is guilty, as he has been charged in the indictment, of the crime of murder in the first degree. In the exercise of the duty with which you are charged as jurors, you have a most responsible trust to perform—important to the prisoner at the bar and the community in which you live. But responsible and unpleasant as that duty may be, you are not to flinch in its discharge. When you inquire into and ascertain the truth, and pronounce your verdict according to the facts, you will have done that which is required at your hands, and have discharged your obligations as good citizens; and let your verdict be what it may, your conduct will satisfy your consciences, and meet the approbation of the honest and the just.

"The defendant, as I have remarked, is indicted for the crime of murder in the first degree. Under this indictment he may be convicted of murder of the first degree, murder of the second degree, or manslaughter.

"Before examining the several crimes embraced in the charge preferred in this indictment, I will remark that the law presumes every defendant, in a criminal case, innocent until his guilt is satisfactorily proved; but if it is shown that the prisoner took the life of the deceased, then this presumption of innocence is overcome, unless the district-attorney, in proving the homicide, has also shown such facts or circumstances as mitigate the offence, or excuse it altogether, and it is then incumbent on the

defendant to show, by a preponderance of evidence in his behalf, all of those circumstances that go to mitigate or excuse the offence.

"Murder is defined by our statute to be the unlawful killing of a human being, with malice aforethought, express or implied. From this definition you will perceive that there must be malice in order to constitute a homicide murder. Indeed, there can be no murder without malice, and in this respect murder differs from most other crimes. But malice in law differs in some respects from malice as ordinarily understood in common conversation. In order that there shall be malice, as understood by this statute, it is not necessary that there should be any particular ill-will towards the deceased, but it requires that state of mind which is fatally bent on mischief, and which prompts the commission of unlawful acts, without just cause or provocation. Malice is also of two kinds—malice express and malice implied. Express malice is that deliberate intention unlawfully to take the life of a human being, which is manifested by external circumstances capable of proof, such as ill-will, old or recent grudges, preparations before the homicide is committed, etc. This kind of malice you all understand, and it is not necessary that I should dwell upon it.

"Implied malice, in its essential ingredients, differs but little from express malice. Its existence, however, is arrived at in a different way. Malice is implied when all of the circumstances of the killing show an abandoned, depraved, and wicked heart. You may know nothing of the real state of a man's mind, or the feelings of his heart, so far as a particular individual is concerned, yet should you see him, without any considerable provocation, deliberately shoot another down, the law says he does it with malice. We can attribute to him no other motive.

"The statute divides murder into two degrees, and in order that you may have its provisions fresh in your memory when you retire to your room, although it has been read in your presence, I will again repeat it. [Here the Court read from Wood's Digest, p. 331, § 21.]

"Now, as to murder in the first degree. You all know that if it is true, as contended by the prosecution, that the deceased was quietly residing at his own house, and for no other reason than that he attempted to prevent the prisoner from forcing himself into the cabin where the deceased was, he shot and killed him, it is murder, and that, too, of the first degree. This is a proposition so simple in its character that it requires no discussion, and I will not insult your intelligence by attempting it.

"Every man's house, in this country, is his castle, and no one has a right to invade it without his consent. And if he shall attempt it, he has a right to use as much force as may be necessary to prevent it; and if he shall succeed, he has a right to turn

him out. And he who will attempt or succeed in such an invasion of the rights of another, and finds himself ejected, and then turns and slays the occupant, is guilty of murder of the highest degree. It matters not that you should believe in this instance that the prisoner shot without aiming at any particular person. If he fired through the door when the occupants were attempting to keep him out, and thereby caused the death of the deceased, it is murder of the first degree.

"But it is contended by the defendant's counsel that the prisoner was drunk, and knew not what he was doing, and for this reason should not be convicted of murder in the first degree, and that the offence is at most murder of the second degree, or manslaughter.

"Our statute declares that drunkenness shall not be an excuse for any crime, unless it be occasioned by the fraud, contrivance, or force of others, for the purpose of causing the perpetration of an offence.

"The reason of the rule laid down by the statute, is found in the fact that if a person could be permitted to excuse himself on the ground of drunkenness, he could feign intoxication, or get drunk on purpose, to afford him a pretext for the commission of crime. For these reasons, and on the grounds of public policy, the law has wisely declared that drunkenness shall be no excuse for crime.

"It is said that at the time the defendant committed the act, he was laboring under a temporary fit of insanity, caused by intoxication. Should you find this to be so, you may take it into consideration in determining the degree of his guilt; but in order to avail himself of this defence, it must be clearly made out; and it is an affirmative proposition to be established by the defendant, unless the prosecution has shown it in proving the homicide. For the law presumes every man sane till it is proved to the contrary; and one statute declares that a person shall be considered of sound mind who is neither an idiot or lunatic, or affected with insanity, and who hath arrived at an age to distinguish between good and evil.

"If you should believe that the prisoner was drunk at the time he committed the act, yet if he had reason enough to distinguish between good and evil, then he is equally as guilty as if he had been sober. And in this connection you should take into consideration the testimony of the witness, that he would show the occupants of the cabin whose house it was, his storming it, his subsequent conduct in getting the gun and having it charged, his return to the cabin, the threats as to shooting after he got there on their refusal to allow him to enter, and his own version of the matter to the witness at the supper-table, and the fact that he was then able to remember and detail the circumstances.

"Even if the design to kill was not formed when he went to

People v. Rodriguez.

the house, yet if after he got there the intention was deliberate-
ly formed, and in pursuance of such formed design he fired the
fatal shot—it is murder. [Here the Court read from 2 Arch-
bold's Criminal Prac. and Pl., pp. 217, 218, note 1, ending with
the figures 1807.]

"If, on the contrary, there was no design on the part of the
prisoner to take life, but he shot merely to frighten the inmates
of the house, or to do them some bodily harm short of causing
death; or the shooting was a mere act of carelessness in the il-
legal attempt to force himself into the cabin against the wishes
of the inmates—then it is murder in the second degree. But if
he shot through the door, not knowing or caring whether he
killed or not, then it is murder of the first degree—for every
man is presumed to intend that which is the natural or probable
consequence of his act. If A were to deliberately fire a loaded
gun into a crowd, or into another's house, knowing it to be in-
habited, and should kill one of the inmates, no one will question
but that he is guilty of murder in the first degree. But if he
goes to the house or premises of another to commit a trespass
merely, and in the commission of such trespass he accidentally
or unintentionally takes the life of a person, it is murder of the
second degree, or manslaughter, according to the particular cir-
cumstances of the killing. [Here the Court read from Arch-
bold's Cr. Pr. and Pl., 218, note 1, paragraph 4.]

"As to the question of manslaughter, I shall here have but little
to say beyond the mere reading of the statute. [The Court here
read the statute as to manslaughter, Wood's Digest, 331, §§ 22–
26.]

"I believe it is not contended that this is a case of voluntary
manslaughter, but that it was involuntary—that the prisoner
did not intend to take life—that the gun was either discharged
at the time it came in contact with the door, or that it after-
wards went off in his hands without his intending it. If this
was the case, and there was no intention on the part of the pris-
oner to take life, the defendant is guilty of manslaughter only.

"It is not claimed that the prisoner acted in self-defence, or
that he is excusable, except it be upon the ground of insanity—
and in reference to that I have said all that I deem it necessary
to say.

"If you have a reasonable doubt as to the guilt of the prison-
er, after considering the evidence, you must acquit. Or if it le-
gally appear that the defendant has committed some one of the
offences, of which he may be convicted, and there is reasonable
ground of doubt in which of two or more degrees he is guilty,
you can only convict of the lowest of such degrees. You
are not to seek for doubts, but to give to the testimony a fair
and reasonable construction, and pronounce your verdict from
conclusions arrived at in that way.

"If you find the defendant guilty, you will specify in your verdict the degree of his guilt. Should you not convict, your verdict will simply be 'not guilty.'"

To which charge defendant excepted.

The jury returned a verdict of "guilty of murder in the first degree," and judgment was entered thereon.

The defendant moved the Court to set aside the judgment and grant a new trial, on certain affidavits, showing that the witness Barry had testified to a different state of facts on the examination of defendant for said crime in the Justice's Court, and thus defendant was taken by surprise; and also on the ground that the verdict is contrary to the evidence.

Which motion was denied by the Court, and defendant excepted.

Defendant also moved the Court to arrest the judgment upon the grounds stated in his demurrer. Which motion was also overruled, and defendant excepted.

From which rulings and judgment the defendant appealed to this Court.

*Mills & Myres* for Appellant.

1. The presiding Judge of the Court of Sessions had no right to summon the grand jury after the commencement of the term of the Court of Sessions; it should have been done by the Court. Wood's Digest, p. 510, § 4.

2. The requisite number of ballots were not drawn from the jury-box of the county as prescribed by law. Wood's Digest, pp. 510, 284, §§ 5, 182.

3. Notice of the drawing of the grand jury was not given as prescribed by law. Wood's Digest, pp. 511, 284, §§ 5, 182.

4. The drawing was not had in the presence of the officers or officer designated and as set forth and required in section one hundred and eighty-two of an Act to regulate Proceedings in Criminal Cases, passed May 1, 1851. Wood's Digest, pp. 510, 284, §§ 5, 182.

5. The District Court erred in overruling defendant's motion to set aside the indictment. Wood's Digest, pp. 291, 284, 510, §§ 279, 182, 4 and 5; Constitution of the United States, Art. III, § 2.

6. The District Court erred in overruling the demurrer to the indictment. Wood's Digest, p. 288, §§ 237–247; State v. Adams, Martin's N. C. Rep., 33; Jane v. State, 3 Mo., 61; 1 Arch. C. P. and P., 87, note 1; Ib., 92, note 1; Ib., 92, note 2; Wharton's Cr. Law, 168, note 5; Constitution of United States, Art. III, § 2.

7. The District Court erred in overruling defendant's challenge to the entire panel of jurors. Wood's Digest, pp. 510, 511, 512, §§ 4, 5, 6, 7, 14, 15, 16.

8. The District Court erred in refusing to allow defendant's peremptory challenge to one of the eleven jurors after they had been sworn, and before the twelfth juror had been sworn. Wood's Digest, p. 296, §§ 341, 342, 343; The People v. Kohle, 4 Cal., 198.

9. The District Court erred in refusing to strike out the testimony of Orrin Day as to defendant's admissions on the ground stated in the exceptions. 1 Greenl., § 219; 1 Phillipp's on Evidence, 401.

10. The charge of the Court to the jury was erroneous. Wood's Digest, pp. 332, 331, §§ 37, 21, 19, 20, 21, 22; 1 Greenl., § 219; 2 Arch. C. P. and P., p. 217, note 1.

11. The District Court erred in overruling defendant's motion for a new trial, and in refusing to consider certain affidavits in support of it. Wood's Digest, pp. 304, 192, §§ 440, 193, and affidavits embodied in statement.

12. The District Court erred in overruling defendant's motion in arrest of judgment. Constitution of United States, Art. III, § 2. Upon the grounds of demurrer, and in application for new trial as above, with authority as there referred to.

*Attorney-General* for Respondent.

The first objection urged in this case was as to drawing, summoning, etc., of the grand jury. An inspection of the record will show a precise conformity to sections eleven, twelve, and thirteen of the "Act concerning Jurors," p. 511 Wood's Digest; further comment is therefore unnecessary.

The defendant then demurred, stating several grounds.

The first is, that " the indictment does not charge the offence to have been committed in the State of California." This was not necessary—the statute only requires the county to be given, and as the prosecution is in behalf of "The People of the State of California," our law-makers conceived it unnecessary to name the State further in either the title or body of the indictment. See Wood's Digest, § 238, p. 288.

The second is, "that the facts constituting the offences are not stated in ordinary and concise language, and that the kind or character of deliberation is not shown."

The indictment is in the common law form, which I presume is sufficient under our practice, and it is unnecessary to charge murder in any other than the ordinary form, as the "degree" must be determined by the jury at the trial, and not in the indictment. People v. Dolan, 9 Cal. R., 576.

I shall not further notice the demurrer.

The objection that the jury was summoned after commencement of the term, in obedience to an order of the Court, was frivolous. "Act concerning Jurors," Wood's Digest, § 16, p. 512.

The refusal of the Court to permit a challenge after the jurors

were sworn, was authorized by statute.  Wood's Digest, p. 296, § 341.

The Court acted properly in refusing to strike out the testimony of defendant's admissions; the presumption is, that confessions are voluntarily made, and the defence had the privilege, by cross-examination or independent testimony, to rebut such presumption.  Roscoe Crim. Ev., 57.

The defendant moved for a new trial upon two grounds, the latter of which was accident and surprise.  The statute, Wood's Digest, p. 304, § 440, specifies the grounds upon which a new trial may be granted, and confines it to those named.  This does not fall within the category.  If the defendant was taken by surprise he should have asked a continuance, to procure his testimony.  But it seems that his principal witness was one of his attorneys, (Mr. Tweed,) then conducting the cause, and I apprehend that he would not have even been entitled to a continuance for the mere purpose of procuring cumulative testimony.

The motion in arrest of judgment was based upon the same grounds stated in the demurrer which I have noticed.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

Indictment and conviction for murder in the first degree.

The objections to the mode of summoning and empanneling the grand and trial jurors, were not well taken.  The demurrer to the indictment was properly overruled, as the form laid down in the statute was substantially pursued.

After eleven jurors had been examined by both parties, and each having exercised his right of challenge, both peremptory and for cause, and these eleven had been sworn to try the case without any objection from the counsel of defendant, and the twelfth juror having been called and accepted by both parties, the defendant, by his counsel, before the last juror was sworn, offered to interpose a peremptory challenge to one of the eleven jurors who had been already sworn, without naming the juror, or stating any fact that came to their knowledge since he was sworn; which offer was refused by the Court, and the counsel of the defendant duly excepted.

Had the eleven jurors been sworn against the objection of defendant, and then his challenge refused, the question would have presented another aspect.  The right to challenge the juror *before* he is sworn, is expressly secured by the statute, and settled by the decision of this Court in the case of the People v. Kohle.  (4 Cal. Rep., 198; Wood's Digest, 296, § 341.)  The challenge may be allowed, for good cause, after the juror is sworn.  In this case no good cause was shown, and the offer to challenge was rightfully refused.

During the trial, a witness for the prosecution proved certain

admissions made by the prisoner to the witness, the day after
the deceased was shot by the defendant.   The counsel of the
prisoner moved to strike out this testimony, upon the ground
that it had not been first shown by the prosecution that these
admissions were made freely, and not under the influence of fear
or other improper inducements.   This motion was refused; and
this is assigned as one ground of error.

It is laid down as a rule, that "before any confession can be
received in evidence, in a criminal case, it must be shown that
it was *voluntary.*"   (1 Greenl. Ev., p. 327, § 219.)   The same rule
is stated in 1 Phil. Ev., 401.   But in Williams' case, cited in
Roscoe's Cr. Ev., 57, it was said by Taunton, J., that "a confes-
sion is presumed to be voluntary unless the contrary is shown."

We think there was no error in this refusal of the Court to
strike out the testimony, for two reasons : *first,* the objection
should have been made to the introduction of the testimony,
but by not making it at the proper time, the *onus* of proving
that the confession of the prisoner was made under the influence
of improper inducements was thrown upon the defendant;
*second,* the facts stated in the testimony of the witness showed,
*prima facie,* that the confession was voluntary.

It is insisted *only in general* terms that the charge of the Court
to the jury was erroneous.   The charge is very full and com-
plete upon all the points arising in the case, and we can see no
error in it.

There was no error in refusing a new trial; and we can see
nothing in the other points made by the defendant's counsel.

Judgment affirmed.